IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>STEPHANIE WINSTON WOLKOFF,<br><br>　　　　　Defendant. | Civil Case No. 20-2935<br><br>Honorable Colleen Kollar-Kotelly |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
STEPHANIE WINSTON WOLKOFF'S MOTION TO DISMISS THE COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON &
　GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000

2001 K Street, NW
Washington, DC 2006-1047
Tel:  (202) 223-7300

*Attorneys for Defendant Stephanie Winston Wolkoff*

Dated:  December 21, 2020

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

LEGAL STANDARDS ................................................................................................................... 4

ARGUMENT ................................................................................................................................... 4

I.      The Agreement Terminated Before Any Alleged Violation ............................................... 4

      A.      The Agreement Did Not Provide For Post-Termination Survival of the Confidentiality Provisions ..................................................................................... 5

      B.      Any Ambiguity in the Agreement Regarding Post-Termination Survival of the Confidentiality Provisions Must Be Construed Against the Government ................................................................................................................. 6

II.     The Agreement Is Void for Lack of Consideration ............................................................ 7

III.    The Confidentiality Restrictions in the Agreement Violate Ms. Wolkoff's Freedom of Expression and Are Unconstitutional ................................................................ 9

CONCLUSION .............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*3E Mobile, LLC* v. *Global Cellular, Inc.*,
  2019 WL 1253455 (D.D.C. Mar. 19, 2019)..................................................................................6

*All W. Pet Supply Co.* v. *Hill's Pet Prod. Div., Colgate-Palmolive Co.*,
  840 F. Supp. 1433 (D. Kan. 1993)...............................................................................................5

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).....................................................................................................................4

*Barton d/b/a Sterling Worldwide* v. *Concept Lab'ys, Inc.*,
  2010 WL 502831 (W.D.N.Y. Feb. 10, 2010) ..............................................................................5

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007).....................................................................................................................4

*\*United States* v. *Bolton*,
  2020 WL 5866623 (D.D.C. Oct. 1, 2020) ...........................................................................4, 6, 9

*Deutsche Bank Nat'l Tr. Co.* v. *FDIC*,
  109 F. Supp. 3d 179 (D.D.C. 2015) ............................................................................................6

*\*Ghahremani* v. *Uptown Partners, LLC*,
  2005 WL 3211463 (D.D.C. Nov. 13, 2005) ...........................................................................7, 9

*Haney* v. *Marriott Int'l, Inc.*,
  2007 WL 2936087 (D.D.C. Oct. 9, 2007) ..................................................................................8

*\*Howard Town Ctr. Dev., LLC* v. *Howard Univ.*,
  7 F. Supp. 3d 64 (D.D.C. 2013) ..................................................................................................5

*Joel Popkin & Co.* v. *Wharton Econometric Forecasting Assoc., Inc.*,
  659 F. Supp. 343 (D.D.C. 1987) .................................................................................................7

*Kowal* v. *MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994).....................................................................................................4

*Lehndorff U.S. Equities, Inc.* v. *George Hyman Constr. Co.*,
  1992 WL 135907 (D.D.C. May 27, 1992)..................................................................................7

*\*McGehee* v. *Casey*,
  718 F.2d 1137 (D.C. Cir. 1983)...................................................................................................9

*Mesa Air Grp., Inc.* v. *Dep't of Transp.*,
  87 F.3d 498 (D.C. Cir. 1996).......................................................................................................6

*Monsoor* v. *Cty. of Albemarle*,
   189 F. Supp. 2d 426 (W.D. Va. 2002) ................................................................................10

*Moonin* v. *Tice*,
   868 F.3d 853 (9th Cir. 2017) ...............................................................................................10

*Nat'l Fed'n Of Fed. Emp.* v. *United States*,
   695 F. Supp. 1196 (D.D.C. 1988) .........................................................................................9

*Osseiran* v. *Int'l Fin. Corp.*,
   950 F. Supp. 2d 201 (D.D.C. 2013) ......................................................................................7

*Trump* v. *Trump, et al.*,
   128 N.Y.S.3d 801 (N.Y. Sup. Ct. July 13, 2020) ................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................4

Fed. R. Evid. 201(b) .......................................................................................................................1

## INTRODUCTION

This lawsuit is a meritless attempt by Melania and Donald Trump to improperly enlist the United States Department of Justice (the "DOJ" or "Government") to pursue entirely personal goals and interests.

The Complaint should be dismissed because the Gratuitous Services Agreement (the "Agreement") at issue terminated on February 20, 2018, prior to any of the conduct challenged in the Complaint. The Agreement did not provide for post-termination survival of any of the confidentiality provisions on which the Government seeks to rely. Where, as here, a contract does not specify that an obligation survives termination, the law will not impose an indefinite term. Accordingly, the Complaint should be dismissed because the Agreement terminated more than two years before any of the alleged violations and there is therefore no basis to claim that Ms. Wolkoff failed to comply with any contractual obligation.

The Complaint also should be dismissed because the Agreement lacked consideration and was therefore invalid and unenforceable. In addition, the Complaint should be dismissed because the restrictive provisions relied upon by the Government are unconstitutional and violate Ms. Wolkoff's First Amendment right to freedom of expression.

## BACKGROUND

Following the 2016 presidential election, Stephanie Winston Wolkoff helped design and oversee several events in connection with President Trump's inauguration in January 2017.[1] Ms.

---

[1] *See* Emily Heil, *Reported inauguration advisor Stephanie Winston Wolkoff is known for glam events*, WASH. POST (Nov. 23, 2016), https://www.washingtonpost.com/news/reliable-source/wp/2016/11/23/reported-inauguration-adviser-stephanie-winston-wolkoff-is-known-for-glam-events/; *see also* Fed. R. Evid. 201(b) (allowing courts to take judicial notice of facts that are "generally known" or that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Wolkoff was offered this role because of her extensive experience as an industry-leading event coordinator (including for such high-profile events as the Met Gala), and because she was a close friend of then-incoming First Lady Melania Trump for more than a decade.[2]

Following the inauguration, Ms. Wolkoff agreed to stay on and help Mrs. Trump, including by advising on staffing decisions and initiatives, though she had no formal role or title.  *See* Compl. ¶ 19.  Ms. Wolkoff agreed to volunteer for this effort out of a sense of civic duty and a desire to help her close friend.  The White House later formalized Ms. Wolkoff's relationship with the Office of the First Lady by requiring that she sign a "Gratuitous Services Agreement" (the "Agreement"), which she did on August 21, 2017.  Compl. ¶ 20; Compl. Ex. A.

The Agreement specified that Ms. Wolkoff was merely a "volunteer," not a government employee, and that she would offer services "without the expectation of receiving any compensation . . . ."  Compl. Ex. A ¶ I.  Although Ms. Wolkoff received "access to the White House complex and equipment" and "email systems," Compl. Ex. A ¶¶ X, XIII, that access was provided specifically in exchange for Ms. Wolkoff's agreement to release the United States from any and all claims and to protect the security of certain accessed information.  *Id.*  The allegation in the Complaint that Ms. Wolkoff received additional consideration in the form of a "personal and professional opportunity," Compl. ¶ 24, is inconsistent with the express terms of the Agreement.

The Agreement also contained extraordinarily broad and vague confidentiality provisions, which purported to prohibit Ms. Wolkoff from disclosing, among other things, "any and all information furnished to [her] by the Government . . . , information about the First Family, or other information about which [she] may become aware during the course of performance."  Compl. Ex.

---

[2]   *See id.*

2

A ¶ V.  The confidentiality provisions also purported to bar Ms. Wolkoff from disclosing "the contents of this Agreement, or [her] work with . . . [the Office of the First Lady] . . . ."  Compl. Ex. A ¶ VII.

The Agreement did *not* specify, however, any set term for the confidentiality provisions, nor did the Agreement contain any language indicating that any provision would survive termination of the Agreement.  Compl. ¶ 21; *see generally*, Compl. Ex. A.  By contrast, as the Complaint acknowledges, the Agreement did specify that September 30, 2018 was the latest date at which certain other provisions—like Section I indicating Ms. Wolkoff's lack of compensation and employment status—would terminate.  Compl. ¶ 21; *see also* Compl. Ex. A ¶ I.  Moreover, the Agreement specified that it could "be discontinued at any time and for any reason by [Ms. Wolkoff] or at the sole discretion of [the First Lady]," Compl. Ex. A ¶ XVIII, and the White House did just that, terminating the Agreement on February 20, 2018.  *See* Compl. ¶ 31.

Notably, the Government does not—and cannot—allege that Ms. Wolkoff has had any contractual, agency, or other formal relationship with the First Lady or the government since the February 2018 termination.  The Complaint also specifies that the alleged violations occurred no earlier than July 2020, approximately **29 months** after termination of the Agreement.  *See* Compl. ¶¶ 32–34.  In July 2020, Ms. Wolkoff received a demand letter from an attorney purporting to represent Mrs. Trump personally.  After deficiencies in the theory asserted in that letter were identified by counsel for Ms. Wolkoff, the DOJ subsequently delivered its own demand letter, to which Ms. Wolkoff's counsel responded by pointing out fundamental legal and factual deficiencies in the Government's position.  *See* Compl. ¶¶ 32–33.  Despite these deficiencies, the Government subsequently brought this lawsuit.

3

**LEGAL STANDARDS**

The Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim if, taking the well-pleaded factual allegations as true, the Government has failed to show that its claim for relief is plausible on its face. *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). A "court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal* v. *MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, "[i]n interpreting contracts between private parties and the United States, courts apply federal common law." *United States* v. *Bolton*, 2020 WL 5866623, at *4 (D.D.C. Oct. 1, 2020) (citation omitted). The federal common law of contracts "'dovetails . . . with general principles of contract law,' including those set out in the Restatement (Second) of the Law of Contracts." *See id.* (quoting *NRM Corp.* v. *Hercules, Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985)).

**ARGUMENT**

The Complaint should be dismissed for three independent reasons: (i) the Government has no proper basis on which to claim that Ms. Wolkoff violated the Agreement, which terminated more than two years before the challenged conduct; (ii) the Agreement is void for lack of consideration; and (iii) the vague and overbroad confidentiality restrictions in the Agreement violate Ms. Wolkoff's First Amendment right to freedom of expression.

**I.     The Agreement Terminated Before Any Alleged Violation**

The Government cannot properly assert a breach of contract claim arising out of the Agreement because it terminated more than two years before any alleged breach, and the Agreement did not provide for the confidentiality provisions to survive termination of the Agreement. In addition, to the extent any ambiguity exists with respect to the post-termination

4

survival of the confidentiality provisions, that ambiguity must be construed against the Government.

### A. The Agreement Did Not Provide For Post-Termination Survival of the Confidentiality Provisions

The Complaint should be dismissed because the confidentiality provisions of the Agreement did not survive termination. There is no dispute that the Agreement was terminated on February 20, 2018. *See* Compl. ¶ 31. The Complaint does not offer any facts to support the Government's baseless allegation that the confidentiality provisions survived termination of the Agreement. *See* Compl. ¶ 48.

Where a contract fails to specify that confidentiality provisions survive termination of the contract, the confidentiality provisions terminate at the same time as the contract. *See Howard Town Ctr. Dev., LLC* v. *Howard Univ.*, 7 F. Supp. 3d 64, 87 n.18 (D.D.C. 2013) (statements allegedly in violation of confidentiality provision published after termination of agreement not actionable), *vacated on other grounds*, 788 F.3d 321 (D.C. Cir. 2015); *All W. Pet Supply Co.* v. *Hill's Pet Prod. Div., Colgate-Palmolive Co.*, 840 F. Supp. 1433, 1439 (D. Kan. 1993), *amended*, 842 F. Supp. 1376 (D. Kan. 1994) ("contractual duty . . . to maintain the confidentiality of the customer information provided under the terms of the agreement . . . terminated as of [the termination date of the contract]."); *Barton d/b/a Sterling Worldwide* v. *Concept Lab'ys, Inc.*, 2010 WL 502831, at *3 (W.D.N.Y. Feb. 10, 2010) (contracts that do not specify term of obligations "will not be construed to provide for perpetual performance") (internal quotation marks and citations omitted).

The Agreement here did not provide for post-termination survival of the confidentiality provisions, but did permit either party to terminate the Agreement in its entirety at any time. Accordingly, based on the allegations of the Complaint and the unambiguous terms of the

5

Agreement, any duties imposed on Ms. Wolkoff by the Agreement ceased more than two years before the challenged conduct, when the Agreement was terminated by the White House. For this reason alone, the Complaint should be dismissed.

### B. Any Ambiguity in the Agreement Regarding Post-Termination Survival of the Confidentiality Provisions Must Be Construed Against the Government

Even if there were ambiguity with respect to post-termination survival of the Agreement's confidentiality provisions (which there is not), applicable common law principles of contract interpretation require that the provisions be construed against the Government as the Agreement's drafter. *See United States* v. *Bolton*, 2020 WL 5866623, at *8 (D.D.C. Oct. 1, 2020) (citing 11 WILLISTON ON CONTRACTS § 32:12 (4th ed.) (Nov. 2020)); *see also Deutsche Bank Nat'l Tr. Co.* v. *FDIC*, 109 F. Supp. 3d 179, 211 (D.D.C. 2015) (construing ambiguous agreement against government agency that drafted it); *Mesa Air Grp., Inc.* v. *Dep't of Transp.*, 87 F.3d 498, 506 (D.C. Cir. 1996) (same).

The Agreement here was drafted by the White House to "memorializ[e]" Ms. Wolkoff's "service to the First Lady." Compl. ¶ 20; *see also* Compl. Ex. A at 1 (stating that Ms. Wolkoff "hereby understand[s], acknowledge[s], and agree[s]" to various commitments required by the Office of the First Lady). The Government—indisputably a sophisticated party—knew how to include language regarding the duration or survival of the terms, given that Section I of the Agreement specified a September 30, 2018 expiration date for certain other provisions. *See* Compl. Ex. A ¶ I. Nevertheless, the Government did ***not*** include any period of survival for the confidentiality provisions. Any ambiguity created by the failure of the Agreement to specify a term for the confidentiality provisions or to specify that those provisions would survive termination therefore must be construed against the Government, such that the confidentiality provisions did not survive termination. *See, e.g.*, *3E Mobile, LLC* v. *Global Cellular, Inc.*, 2019 WL 1253455, at

6

\*13 (D.D.C. Mar. 19, 2019) (declining to read a choice-of-law provision into a contract where "it is clear that the parties knew how to choose a particular state's law to govern [the] contract," but did not do so); *Joel Popkin & Co.* v. *Wharton Econometric Forecasting Assoc., Inc.*, 659 F. Supp. 343, 348 (D.D.C. 1987) (finding contract unambiguous where "the Agreement indicates that the parties knew how" to use certain language, but did not do so); *Lehndorff U.S. Equities, Inc.* v. *George Hyman Constr. Co.*, 1992 WL 135907, at \*8 (D.D.C. May 27, 1992) (declining to allow recovery of attorneys' fees where "the contract makes clear that the parties knew how to specify" a right to such recovery, but did not do so). The Complaint thus should be dismissed because the Agreement terminated before any alleged breach occurred.

## II.     The Agreement Is Void for Lack of Consideration

The Complaint also should be dismissed because the Agreement is void for lack of consideration. "[C]onsideration or mutuality of obligation is a requirement for the formation of a bilateral contract. When there is no consideration or mutuality of obligation, courts within the District of Columbia have held that equity cannot be invoked to enforce a contract that lacks consideration." *Ghahremani* v. *Uptown Partners, LLC*, 2005 WL 3211463, at \*16 (D.D.C. Nov. 13, 2005) (dismissing claims for breach of contract and unjust enrichment) (citations omitted); *see also Osseiran* v. *Int'l Fin. Corp.*, 950 F. Supp. 2d 201, 209 (D.D.C. 2013) ("An exchange of promises suffices so long as each party undertook to do something it would otherwise have no legal obligation to do.") (internal quotation marks and citation omitted).

Here, there is no allegation that Ms. Wolkoff received consideration for her services. As noted above, the Agreement made clear that Ms. Wolkoff was a "volunteer," not a government employee, and that she would offer her services "without the expectation of receiving any compensation . . . ." Compl. Ex. A ¶ I. That makes sense because the Agreement was a

7

"gratuitous" arrangement. *See Haney* v. *Marriott Int'l, Inc.*, 2007 WL 2936087, at *9 (D.D.C. Oct. 9, 2007) (finding contract to be "unenforceable ***gratuitous*** promise" where plaintiff did not "offer[] to perform or forbear from any action") (emphasis added).

That also means, however, that the Agreement legally was void because it contained no mutuality of obligation; it did not obligate the Office of the First Lady to do anything. Although almost every paragraph in the Agreement contained promises about what Ms. Wolkoff "shall" do or not do, there were no reciprocal promises made by the Office of the First Lady. Even the confidentiality provisions stated that Ms. Wolkoff "may" gain access to information "in the course of performing [her] gratuitous services," without actually obligating the Office of the First Lady to provide any such information. Compl. Ex. A ¶ V.

According to the Complaint, the only "consideration" Ms. Wolkoff received under the Agreement was "access to the White House and sensitive information[.]" Compl. ¶ 23. Under the Agreement, however, that access was ***not*** promised to Ms. Wolkoff, and in any event, the Agreement stated that such access would be provided to Ms. Wolkoff, not for her services, but specifically for her agreement (i) to release the United States from any and all claims, Compl. Ex. A ¶ X, and (ii) to protect the security of the "White House communications and email systems," Compl. Ex. A ¶ XIII. Although the Complaint alleges that Ms. Wolkoff received additional consideration in the form of a "personal and professional opportunity," Compl. ¶ 24, that is inconsistent with the plain language of the Agreement.

Moreover, although the Government styles Count One of the Complaint as a breach of contract claim, which is a legal and not equitable claim, the Government seeks only equitable remedies, namely a constructive trust seizing any proceeds from Ms. Wolkoff's book. *See* Compl. ¶¶ 49–50; *see also* Compl. ¶¶ 51–58; Compl. at 15 ("Prayer for Relief"). Equitable remedies

8

cannot be invoked for a contract, like the Agreement here, that lacks consideration or mutuality of obligation. *See Ghahremani*, 2005 WL 3211463, at *16. Accordingly, the Agreement is void for lack of consideration, and the Government cannot obtain the relief it seeks.

### III. The Confidentiality Restrictions in the Agreement Violate Ms. Wolkoff's Freedom of Expression and Are Unconstitutional

Finally, the Complaint should be dismissed because the confidentiality restrictions in the Agreement violate Ms. Wolkoff's First Amendment rights and are unconstitutional. A government restriction on speech must "protect a substantial government interest unrelated to the suppression of free speech," and be "narrowly drawn to 'restrict speech no more than is necessary to protect the substantial government interest.'" *McGehee* v. *Casey*, 718 F.2d 1137, 1142–43 (D.C. Cir. 1983) (citations omitted). The Government cannot properly use non-disclosure agreements to censor government employees or service providers in matters not involving classified information or national security interests. *See id.* at 1141 ("The government has no legitimate interest in censoring unclassified materials"); *Bolton*, 2020 WL 5866623, at *8 ("government may not prevent [Defendant] from publishing unclassified materials"); *Nat'l Fed'n Of Fed. Emp.* v. *United States*, 695 F. Supp. 1196, 1205 (D.D.C. 1988) (finding unconstitutional government's restriction on publication of undefined, "classifiable" information). Since the Complaint does not—and cannot—allege that Ms. Wolkoff even had access to classified or national security-related information, let alone disclosed such information in her book, the Government cannot establish a legitimate and substantial interest in restricting Ms. Wolkoff's freedom of expression.

Perhaps recognizing this fatal flaw in its claims, the Government attempts to contort the First Lady's personal interest in limiting negative publicity into a governmental interest in protecting the internal deliberations of the executive branch (which appears to be a claim of executive privilege, without actually using the phrase). *See* Compl. ¶¶ 13–18. The Government's

9

position is meritless because no such governmental interest can be asserted on behalf of a person who is not a government official.

No matter what role the First Lady has fulfilled "historically," Compl. ¶ 13, the Complaint rightfully does not—and cannot—claim that the First Lady is an executive branch official merely by virtue of her marriage to the President. She is not an employee of the United States government, she has no official responsibilities, and she "does not draw a salary for performing any of [her] functions[.]" Compl. ¶ 17. That she is entitled to Secret Service protection, Compl. ¶ 14, helps plan state dinners for visiting foreign dignitaries, Compl. ¶ 15, or "supervise[s] renovations and improvements to the White House," Compl. ¶ 16, is of no consequence, except to show that the First Lady undertakes certain high-profile ceremonial tasks relating to matters of public concern about which private citizens are entitled to speak with the full protection of the First Amendment. *See, e.g.*, *Monsoor* v. *Cty. of Albemarle*, 189 F. Supp. 2d 426, 435–37 (W.D. Va. 2002) (finding unconstitutional employment agreement restricting government employee's right to criticize superiors).

Further, even if the Government could establish a legitimate, substantial interest in restraining Ms. Wolkoff's freedom of expression (which it cannot), there is nothing "narrowly drawn" about the purported restrictions at issue. The vague and overbroad language in the Agreement—which purports to prohibit the disclosure of, among other things, **all** information received from the government, **any** information "about the First Family," and **all** "other information" about which she may become aware in her volunteer role—is not narrowly drawn. *See Trump* v. *Trump, et al.*, 128 N.Y.S.3d 801, 809 (N.Y. Sup. Ct. July 13, 2020) ("[T]he [confidentiality] clause is so overly broad, as to be ineffective."); *see also Moonin* v. *Tice*, 868

10

F.3d 853, 866–68 (9th Cir. 2017) (finding regulation requiring police officers to obtain permission before speaking to media overbroad and unconstitutional); *see id.* at 871, n.9 (collecting cases).

## **CONCLUSION**

For the foregoing reasons, Ms. Wolkoff respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:  December 21, 2020                                    Respectfully Submitted,

PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP


 */s/  Lorin L. Reisner*
Lorin L. Reisner
Harris Fischman
Ryan B. Streit
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3250
lreisner@paulweiss.com
hfischman@paulweiss.com
rstreit@paulweiss.com


Justin Anderson
2001 K Street, NW
Washington, DC 2006-1047
(202) 223-7321
janderson@paulweiss.com